Victor E. WILLY and Phyllis J. Willy, Appellants,

v.

Leslie M. LIEURANCE, et al., Respondents.

No. 11819.

Missouri Court of Appeals, Southern District, Division One.

July 1, 1981.

Ronald J. Fuller, Rolla, for appellants.

Albert Crump, Jr., Rolla, for respondents.

FLANIGAN, Judge.

This appeal[1] involves conflicting claims to two tracts of land located in Long View Subdivision in Phelps County, Missouri. Each tract is 200 feet long and 60 feet wide.

---

1.  All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

2.  Section 445.060 legalizes certain plats, otherwise defective, which have been recorded for

The two tracts appear on a recorded plat of the subdivision and each contains the legend "60′ Rd R/W," which, the parties agree, means "60-foot road right of way." The two disputed areas will be referred to as "Tract 1" and "Tract 2" respectively.

On their 200-foot sides each tract is bordered by building lots which are also 200 feet long. Tract 1 runs generally east-northeastwardly and is bordered on the north by Lot 33 and on the south by Lot 32. Tract 2, which is separated from Tract 1 by four building lots and is south of Tract 1, runs generally northeastwardly and is bordered on the north by Lot 29 and on the south by Lot 28.

The plat of the subdivision was prepared at the instance of Leslie M. Lieurance and wife, who owned the land of which the subdivision was a part. Exhibit 7 was certified by the recorder to be a true copy of the original plat of Long View Subdivision.

Exhibit 7 contains the following: (a) a paragraph entitled "Statements and Dedication," which contains various recitals and which was signed by Leslie M. Lieurance and his wife and bears their acknowledgment before a notary public on September 2, 1959; (b) a paragraph entitled "Surveyor's Certificate," which contains various recitals and which was signed by a Missouri registered land surveyor[2] on September 2, 1959; (c) a map of the subdivision; (d) a paragraph entitled "Approved by Phelps County Court," dated September 4, 1959, which contains the signatures of the members of the Phelps County Court and the attestation of the county clerk. This paragraph recites that the county court examined and approved the plat; (e) the certificate of the recorder of deeds stating that the plat was filed for record on September 4, 1959. The map portion of the plat is as follows:

10 years. That statute is not applicable here for at least one reason—the surveyor here was not the "county surveyor of the county in which said town, city, addition on subdivision is located."

This appeal involves two actions. The first action was filed on October 11, 1979, by five married couples. The plaintiffs are the Lieurances, the Wallises (owners of Lot 33), the McDonalds (owners of Lot 32), the McWilliams (owners of Lot 29), and the Wests (owners of Lot 28).

3. Commencing at the northeast corner of Lot 36, then east 966.2 feet to the west side of

Defendants are Victor E. Willy and wife who, in 1973, received title, by deed, to an irregular tract of 14.73 acres, referred to in the record as "Tract A," which is located, generally, adjacent to and northeast of the two disputed tracts. For the purposes of this opinion only, a reasonably accurate description of Tract A is set forth below.[3]

Missouri Highway No. 72 to a point called Point "A," then southeasterly 367.8 feet along

In their two-count petition the plaintiffs alleged that "they" were legally entitled to possession of Tract 1 and Tract 2 and that on or about October 10, 1979, defendants had unlawfully taken possession of them. Count I, which sounded in ejectment, sought a judgment for possession and an award of damages. In Count II plaintiffs sought injunctive relief prohibiting defendants from "further use" of the two tracts.

On October 12, 1979, the Willys, defendants in the first action, filed a separate action against the Lieurances and the owners of the four lots. In the second action, which sounded in quiet title, the Willys sought a declaration that they were owners in fee simple of the two tracts.

The two actions were consolidated and tried before the court sitting without a jury. The trial court found that the Lieurances are vested with "fee simple title" to the two tracts and are entitled to possession and enjoined the Willys from further use of the tracts. Only the Willys appeal.

Appellants' first point is that the trial court erred in failing to find that appellants are not the owners in fee simple of the two tracts for the reason that various deeds and the recorded plat established record title in the Willys.

Appellants, plaintiffs in the quiet title action, had "the burden to prove title superior to the other(s), not superior to the whole world.... A claimant must prevail on the strength of his own title and not upon any weakness in the title of the other party." (Citing authorities.) *Flowers v. Bales*, 615 S.W.2d 103, 105[1, 2] (Mo.App. 1981).

Several deeds, in addition to the deeds by which the lot owners acquired title to their respective lots, are germane to appellants' first point. In all of the deeds the grantors are married couples and the same is true of the grantees. In the interest of brevity only the surnames are used. All deeds are warranty deeds except Deed 6 which is a quitclaim deed. The following list contains, for each deed and in this order, the date of the deed, the grantor, the grantee, and a description of the land conveyed:

*Deed 1.* May 8, 1959; Coffman; Lieurance; metes and bounds description of "a fractional part of the Southwest ¼ of the Southeast ¼ and of the South ½ of Lots 1 and 2 of the Southwest ¼ of Section 18, Township 37 North, Range 7 West ... containing 35.7 acres more or less."

Comment: Lot 1 and Lot 2, referred to in this deed, and in Deed 2, are not the two building lots, similarly numbered, in the 36 lots contained in Long View Subdivision. The map portion of the plat shows the South ½ of Lot 1 and the South ½ of Lot 2.

The land described in Deed 1 is what later became the 36 lots of the subdivision, Tract 1, Tract 2, Tract A, the land excepted in the description of Tract A, and Long View Lane.

*Deed 2.* December 29, 1965; Lieurance; Williams; the description reads: "Lots 1, 2, 3, 4, 5, 6, 9, 16, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36, Long View Subdivision, being situated in the South ½ of Lots 1 and 2 of the Southwest of Section 18, Township 37 North, Range 7 West and the Southwest ¼ of the southeast ¼ Section 18, Township 37 North, Range 7 West. Except .97 of an acre, more or less, in the Northeast corner of the unplatted part of the South ½ of Lot 1 Southwest, Sec. 18, Twp. 37, Rng. 7. Also all of the unplatted part of the South ½ of Lots 1 and 2 of the Southwest and the Southwest of the Southeast, all in Sec. 18, Twp. 37 N., R 7 W."

*Deed 3.* April 14, 1972; Williams; James; conveys Tract A by metes and

the west side of that highway to the northeast corner of Lot 17, then southwesterly 195 feet along the north sides of Lots 17 and 18 to the northwest corner of Lot 18, then southeasterly along the west side of Lot 18 to the northeast corner of Lot 19, then southwesterly along the north sides of Lots 19, 20, 21, 22, 23, 24 and 25 to the northeast corner of Lot 26, then in a northwesterly curve, along the northern (or northeastern or eastern) sides of Lots 26 through 36 to the point of beginning; except an area in the northeast portion of the foregoing land, said portion beginning at Point A then southeasterly 154.09 feet along the west side of Highway No. 72, then southwesterly 194.95 feet, then northwesterly 288.70 feet, along a line parallel to the west side of Highway No. 72, then easterly 236.95 feet to Point A, and except a .2 acre tract adjacent to and east of Lot 36, and except a .21 acre tract adjacent to and east of Lot 35.

bounds; recites that it contains 14.73 acres; does not include Tract 1 or Tract 2.

*Deed 4.* July 17, 1973; James; Willy; same description as Deed 3.

*Deed 5.* June 29, 1979; Lieurance; Lieurance; Tract 1 and Tract 2.

Comment: Grantors, Lieurance and wife, are the same persons as grantees.

*Deed 6.* September 1, 1979; Williams; Willy; Tract 1 and Tract 2.

The two primary sources of confusion with respect to the record title to Tract 1 and Tract 2 are: (1) an apparent inconsistency between the recitals in the "statements and dedication" portion of Exhibit 7, on the one hand, and the recitals in the "surveyor's certificate" and the map portion of Exhibit 7 on the other hand; (2) the description contained in Deed 2.

Appellants' argument that they hold record title to Tract 1 and Tract 2, and that the trial court erred in ruling otherwise, proceeds on this line of reasoning:

(1) Although the map and the "surveyor's certificate" of Exhibit 7 show and describe Tract 1 and Tract 2 as road rights of way, they were not mentioned as such in the "statements and dedication" and, in effect, are disclaimed by the "statements and dedication" because the latter recites the existence of Long View Lane ("a long existing county road"), and describes a "utility right of way easement" and then states, "There are no other public places in the subdivision, aside from [Long View Lane] and the [utility right of way easement]." Thus Tract 1 and Tract 2 were not dedicated and the fee interest in them remained in the Lieurances at the time Exhibit 7 was recorded.

(2) In view of (1), Tract 1 and Tract 2 were "unplatted" as that word is used in the description contained in Deed 2. Accordingly Deed 2, and specifically the last sentence of the description therein, passed the fee interest in Tract 1 and Tract 2 to Williams.

(3) Deed 5 conveyed nothing because the grantors and the grantees were the same persons. Deed 5, however, is evidence of the uncertainty in the minds of the Lieurances as to whether they held record title in Tract 1 and Tract 2.

(4) Williams, who acquired title to Tract 1 and Tract 2 under Deed 2, conveyed that title to appellants by Deed 6.

Chapter 445 RSMo bears the title "Plats." The statutes in that chapter are of long standing, some of them dating back to 1825. The chapter contains various requirements with respect to the manner in which plats are drawn and prescribes procedures with respect to acknowledgment and recordation.

Although § 445.010 and other statutes in Chapter 445 employ the language "any city, town or village, or any addition to any city, town or village," some of those statutes, including § 445.070(3), have been held applicable to subdivisions which are located in a county but outside any city, town or village.

Section 445.070 provides, in pertinent part:
" . . .

2. Such maps or plats of such cities, towns, villages and additions made, acknowledged, certified and recorded, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, town or village, when incorporated, in trust and for the uses therein named, expressed or intended, and for no other use or purpose.

3. If such city, town or village shall not be incorporated, then the fee of such lands conveyed as aforesaid shall be vested in the proper county in like trust, and for the uses and purposes aforesaid, and none other."

If Chapter 445 received compliance, and there was an effective dedication of Tract 1 and Tract 2 as roadways, "the fee of such lands as conveyed as aforesaid shall be vested in the proper county in like trust and for the uses and purposes aforesaid, and none other." § 445.070(3); *Winschel v. County of St. Louis,* 352 S.W.2d 652, 654[2] (Mo. 1961); see also *State ex rel. Ballard v. Luten,* 555 S.W.2d 855, 857 (Mo.App.1977).

Although § 445.070 used the word "fee," "such interest is not a title in fee simple, but only an easement which consists of the right of the public to make use of the streets and alleys for the purpose intended

by the dedication, and for no other use or purpose. Meanwhile, the fee (subject to the easement) remains in those who owned the land at the time of its dedication to public use, and in their successors in title; and if ever the streets and alleys are vacated and their public use abandoned, the original owners, or their grantees, will thereafter hold the same freed from the burden of the former use." (Authorities cited.) *Campbell v. City of Glendale*, 211 S.W.2d 519, 523 (Mo.App.1948).

Photographs were introduced of Tract 1 and Tract 2. Tract 1 is heavily wooded and has received little use by anyone. Tract 2 is basically a pasture which has been used, only to a limited extent, by Williams and later by the Willys in gaining access to Tract A.

If, as this court holds, there was a statutory dedication of Tract 1 and Tract 2 to Phelps County for road purposes, the fact "there was a non-user by the public does not work an abandonment of it," *Bates v. Mueller*, 413 S.W.2d 853, 855[4] (Mo.App. 1967); *Winschel*, supra, at 653; *Hill v. Hopson*, 150 Mo.App. 611, 131 S.W. 357 (1910), and it is immaterial that Phelps County has never spent money or labor for the construction of roads on the disputed tracts, *Winschel*, supra, at 653, and it is immaterial whether the Phelps County Court ever accepted the dedication,[4] *Weakley v. State Highway Commission*, 364 S.W.2d 608, 611 (Mo.1963); *Hill v. Hopson*, supra, although the instant plat reflects such acceptance.

The Willys claim that Exhibit 7 is defective (and, inferentially, fails to comply with Chapter 445, although they cite no statute in their brief) because the "statements and dedication" portion of Exhibit 7 makes no mention of Tract 1 and Tract 2 and, so they argue, disclaims the same. It is at least arguable that there is no factual foundation for this contention. The Willys point to the language, "There are no other public places in the subdivision aside from [Long View Lane] and the [utility right of way easement]." Long View Lane existed before

Exhibit 7 was prepared and it is inferable that the utility easement may also have been in existence. Perhaps the quoted language refers to existing public places, that is, those which existed before the plat was prepared. Thus it is arguable that there is no inconsistency between the "statements and dedication" portion of Exhibit 7 on the one hand, and the map portion and the surveyor's certificate on the other hand. The latter two clearly set forth the existence of Tract 1 and Tract 2 as roadways. Even if the inconsistency exists, however, it is no bar to the effectiveness of the dedication.

"Plats 'must be construed fairly and reasonably * * *; they are to be construed as a whole in order that the intention of the party may be ascertained * * *; no part of the plats is to be rejected as meaningless, if it can be avoided, and lines as well as words are to be considered; and all doubts as to the meaning of the plat and *any conflict on its face* will be construed most strongly against the dedicator. * * *.' " (Emphasis added.) *Schell v. City of Jefferson*, 357 Mo. 1020, 212 S.W.2d 430, 435 (Mo. banc 1948). To similar effect see *Byam v. Kansas City Public Service Company*, 328 Mo. 813, 41 S.W.2d 945 (1931); 26 C.J.S. Dedication § 49, p. 519, 23 Am.Jur.2d Dedication § 26, p. 24. There is also authority to this effect: "The lines as exhibited on the plat may control the explanatory notes." Elliott, Roads and Streets, § 130, p. 155 (4th Ed. Rev.) "If it is said that this statement [in the dedicatory clause] is in conflict with the map, then, under the authority cited, the map must govern." *McDonald v. Kummer*, 56 Colo. 153, 137 P. 51, 54[2]. Thus Tract 1 and Tract 2 were dedicated to Phelps County.

Statutory dedication of Tract 1 and Tract 2 as streets having been accomplished, they may be vacated only by invoking the procedure contained in § 71.270. *Ballard*, supra; *Winschel*, supra.

4. Section 445.030 requires submission to and approval by the "common council" of a city, town or village if the "map or plat be of land situated within the corporate limits of any incorporated city, town or village." See also

Chapter 64 RSMo dealing with County Planning and Zoning. Section 64.590 requires prerecordation approval of plats in class three counties in circumstances not appearing in this record.

■ Appellants are correct in their contention that the fee (subject to the public easement) in Tract 1 and in Tract 2 remained in the Lieurances who owned the land at the time of the dedication of the two tracts to public use, and in their successors in title. *Campbell v. City of Glendale,* supra.

There is, however, no validity in appellants' argument that the last sentence of the description in Deed 2 had the effect of passing the fee interest in Tract 1 and Tract 2 to Williams. Appellants argue that Tract 1 and Tract 2 are "unplatted" and thus fall within the language "the unplatted part" as used in that sentence. Tract 1 and Tract 2 are shown on the map portion of Exhibit 7. They are specifically described in the surveyor's certificate. In each of those components of Exhibit 7 the tracts are described as roads. The two tracts were "platted" and the contents of the "statements and dedication" previously quoted do not detract from their status of being "platted."

■ It happens, however, that Deed 2 did in fact pass the fee (subject to the public easement) in Tract 1 and Tract 2 from the Lieurances to Williams, but not for the reason advanced by appellants. The reason that Deed 2 had that effect is that it conveyed to Williams Lots 32 and 33 (which border on Tract 1) and Lots 28 and 29 (which border on Tract 2). "A conveyance [of a platted lot] adjoining an *existing* street, without mentioning the street in the deed, carries to the grantee the fee simple title to the center of the street (or to the far side if the original grantor contributed all of the street to the public use)." *Prewitt v. Whittaker,* 432 S.W. 240, 243[2] (Mo. 1968). See Gill, Treatise on Real Property Law, Missouri, Vol. III, p. 1131.

The fee (subject to the public easement) in Tract 1 and Tract 2 which Williams acquired under Deed 2 was in turn conveyed by Williams when he (and wife) conveyed Lot 32 to the McDonalds, Lot 33 to the Wallises, and (by mesne conveyances) Lot 28 to the Wests and Lot 29 to the McWilliams, without a specific reservation of the fee. The foregoing deeds, each promptly recorded, antedated Deed 6, the quit-claim deed from Williams to appellants.

Although the decree of the trial court was erroneous in finding that the Lieurances, rather than the nonappealing owners of the four bordering lots respectively, were vested with the fee to Tract 1 and Tract 2, that error is of no aid to appellants who must "prevail on the strength of [their] own title and not on the weakness of the title of the other party." *Flowers v. Bales,* supra. Moreover, "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court *against the appellant* materially affecting the merits of the action." Rule 84.13(b).

Appellants' first point has no merit.

■ Appellants' second point is that the trial court erred in failing to find that the Willys were the fee simple owners of Tract 1 and Tract 2 by reason of adverse possession. In support of this contention appellants seek to combine their alleged "possession" of Tract 1 and Tract 2 with the alleged prior possession of those tracts by appellants' predecessor Williams.

It is unnecessary to consider whether or how this contention is affected by the fact that Tract 1 and Tract 2 have been dedicated to the public. In the early 1970's Williams' use of Tract 1 "consisted of cutting a tree or something off it—it was not passable by a vehicle or anything." Williams moved from the area in 1974. Although Williams used Tract 2 occasionally, and Willy used the two tracts to a very limited extent in 1979, their combined use was insufficient to meet the statutory requirement of ten years or to establish each of the five elements of adverse possession listed in *Slentz v. Cherokee Enterprises, Inc.,* 529 S.W.2d 495, 496[2] (Mo.App.1975).

"Occasional entries or temporary use or occupation [of disputed land] are insufficient to establish that actual possession which is necessary to manifest adverse possession." *Brown v. Evans,* 182 S.W.2d 580, 583[10] (Mo.1944). See also *Chandler v. Marshall,* 568 S.W.2d 818, 819[2] (Mo.App. 1978). Neither was the proof sufficient to

sustain a claim to an easement by prescription. *Carpenter-Union Hills Cem. v. Camp Zoe*, 547 S.W.2d 196, 199[1] (Mo.App.1977).

The Willys' right to use Tract 1 and Tract 2 is no more than that held by any member of the public. To the extent that the injunction portion of the decree is inconsistent with that right, it is modified so as to permit its exercise. As so modified the judgment is affirmed.

Judgment modified and affirmed.

GREENE, P. J., and TITUS, J., concur.